IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1456 C.D. 2021 |
| | : | |
| Ronald P. Ware, | : | Submitted: February 3, 2026 |
| Appellant | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                FILED: March 23, 2026

Ronald P. Ware (Appellant) appeals from the December 15, 2020 order of the Court of Common Pleas of Somerset County (trial court) denying his Petition to Permit Summary Appeal *Nunc Pro Tunc* and/or Enforce Plea Agreement (*Nunc Pro Tunc* Petition).[1]  Upon review, we affirm.

## I.   Factual and Procedural Background

On December 5, 2019, Appellant[2] was hunting in Somerset County.  At that time, Appellant was in a vehicle and encountered a black bear.  Appellant shot at

---

[1] The matter was assigned to this Judge on February 3, 2026.

[2] Appellant was hunting with his son, Jody L. Ware.  Both Appellant and his son received the same citations, and the facts are essentially the same in each case.  They each filed the same *Nunc Pro Tunc* Petition and had a consolidated hearing in the trial court on those petitions.  Appellant and his son briefed the issues together, received identical orders from the trial court and have raised

**(Footnote continued on next page…)**

the bear from a motor vehicle and then tracked the bear for approximately 10 hours before he was able to take the bear.

The following day, Appellant was confronted by Pennsylvania Game Warden Shawn Barron while with another group of hunters. Warden Barron cited Appellant for the unlawful use of a motor vehicle to hunt,[3] hunting in a safety zone,[4] shooting across a roadway,[5] and the unlawful taking or possession of wildlife[6] in violation of the Game and Wildlife Code. Warden Barron informed Appellant that he could either plead guilty or not guilty. Warden Barron then stated, "If you plead guilty, you get payment on your fines, everything is done and over with. If you plead not guilty, you're scheduled for a hearing with the [j]udge in Meyersdale." (Reproduced Record (R.R.) at 10.) No discussion occurred regarding the revocation of Appellant's hunting privileges.

---

identical issues on appeal. Jody L. Ware's appeal is docketed in this Court at 1 C.D. 2022, and our opinion in that case essentially mirrors this one.

[3] Section 2308(a)(7) of the Pennsylvania Game and Wildlife Code, Act of June 3, 1937, P.L. 1225, *as amended*, prohibits the hunting of game or wildlife through the use of "[a] vehicle or conveyance of any kind or its attachment propelled by other than manpower." 34 Pa.C.S § 2308(a)(7). A violation of subsection (a)(7) is a summary offense of the third degree.

[4] Section 2505 of the Game and Wildlife Code prohibits discharging a firearm in a safety zone. 34 Pa.C.S. § 2505. A violation of this section is a summary offense of the fourth degree.

[5] Section 2504(a) of the Game and Wildlife Code prohibits hunters from shooting while they are "on" the highway, and from shooting "across a public highway," unless the angle of the shot is "high enough" to "preclude any danger to the users of the highway." 34 Pa.C.S § 2504(a). A violation of this section is a summary offense of the fourth degree.

[6] 34 Pa.C.S. § 2307 (classifying violations relating to unlawful taking or possession of any other game or wildlife as a summary offense of the fifth degree).

On December 6, 2019, the Pennsylvania Game Commission (Commission) mailed four citations to Appellant. Each citation contained the following warnings under the "Notice" section on the front of the citation, in relevant part:

> You have certain rights, including the right to legal representation and the right to a hearing at which you are presumed innocent until proven guilty. If you fail to appear for trial, the trial may be held in your absence. **Your privileges to hunt and trap anywhere in the Commonwealth may be suspended or revoked for any of the following:**
>
> **-If you plead guilty** or are found guilty of **an offense under the Game and Wildlife [C]ode**.

(R.R. at 51) (emphasis added). On December 17, 2019, Appellant entered guilty pleas to the citations and subsequently paid all fines and costs in full.[7] The following day, on December 18, 2019, Appellant went to the district magistrate's office to set up a payment plan and was informed by an employee there that "this could take your hunting privileges away." *Id.* at 15. The next day, on December 19, 2019, Appellant's son reached out to Warden Barron regarding the revocation of their hunting privileges and Warden Barron confirmed, under no uncertain terms, that they "**would be** losing [their] hunting license privileges at that time." *Id.* at 13, 17 (emphasis added). **Despite receiving express notice that the initial statements made by Warden Barron in the**

---

[7] Hunting license revocation proceedings are civil administrative actions separate from criminal prosecutions. Citation proceedings address criminal liability for Game and Wildlife Code violations through the courts, while revocation proceedings constitute separate civil administrative actions through which the Commission exercises its statutory authority to suspend or revoke hunting privileges based on those violations. *See Malishaucki v. Pennsylvania Game Commission*, 427 A.2d 787 (Pa. Cmwlth. 1981); *Pfingstl v. Pennsylvania Game Commission*, 531 A.2d 821, 823 (Pa. Cmwlth. 1987). This administrative action and the criminal case proceed on separate tracks.

**field may not have been correct, Appellant did not file a notice of appeal within 30 days after entry of his guilty pleas at that time.**[8]

On February 21, 2020, Appellant was notified by administrative order of the Commission (Revocation Notice) that his hunting license was revoked for three years.[9] *Id.* at 11. **Appellant did not file an appeal *nunc pro tunc* from his guilty pleas at that time.** He chose instead to appeal his hunting license revocation to the Commission by requesting an administrative hearing. An administrative hearing officer held a video hearing on June 26, 2020, after which he recommended that the Commission uphold the three-year revocation. On July 6, 2020, the Commission issued a final administrative order notifying Appellant that the revocation of his hunting license remained as ordered.

---

[8] Pennsylvania Rule of Criminal Procedure (Pa.R.Crim.P.) 460 establishes that an appeal from a summary proceeding shall be commenced by the filing of a notice of appeal within 30 days of the date of conviction or entry of a guilty plea. The text of that rule follows:

> (A) **When an appeal is authorized by law in a summary proceeding**, including an appeal following a prosecution for violation of a municipal ordinance that provides for imprisonment upon conviction or upon failure to pay a fine, **an appeal shall be perfected by filing a notice of appeal within 30 days** <u>after the entry of the guilty plea</u>, the conviction, or other final order from which the appeal is taken. The notice of appeal shall be filed with the clerk of courts.

Pa.R.Crim.P. 460 (emphasis added). Rule of Criminal Procedure 462 provides that upon appeal, the case "shall be heard *de novo* by the judge of the court of common pleas sitting without a jury." Pa.R.Crim.P. 462(A). *See also* Pa.R.Crim.P. 460, comment ("This rule was amended in 2000 to make it clear in a summary criminal case that the defendant may file an appeal for a trial *de novo* following the entry of a guilty plea").

[9] Section 2741(b) of the Game and Wildlife Code provides that the Commission may revoke any hunting license if the person has been convicted or signed an acknowledgement of guilt of violating any of its provisions. 34 Pa.C.S. § 2741(b).

On August 5, 2020, Appellant filed his *Nunc Pro Tunc* Petition challenging, for the first time, his guilty pleas. Therein, Appellant argued that he should be granted the right to appeal *nunc pro tunc* because he was misled by Warden Barron to believe that his hunting privileges would not be revoked if he pleaded guilty to the four citations. *See Nunc Pro Tunc* Petition, 8/5/20, ¶ 5.[10] He further argued that his *Nunc Pro Tunc* Petition was filed promptly because (1) he entered his guilty pleas on December 17, 2019, but did not learn of the revocation of his hunting license until he received the Revocation Notice from the Commission on February 21, 2020; (2) due to the COVID-19 pandemic, "most" government offices were closed from mid-March to late May 2020; (3) the license revocation was not upheld by final order until July 6, 2020; and (4) counsel was not available to speak to him until the last week of July 2020, and he was not aware of the possibility of filing the *Nunc Pro Tunc* Petition until that time. *Id.*, ¶¶ 17-20.

After conducting an evidentiary hearing and considering legal briefs, the trial court denied Appellant *nunc pro tunc* relief on the grounds that (1) Warden Barron's statements did not equate to extraordinary circumstances involving fraud or a wrongful or negligent act of a court official that justified a later appeal from the guilty pleas; and that, in any event, (2) Appellant failed to appeal his guilty pleas within a reasonable time after learning of the grounds for *nunc pro tunc* relief because he waited approximately eight months, until August 5, 2020, to do so.

On appeal,[11] Appellant argues that (1) he should be granted the right to appeal his guilty pleas *nunc pro tunc* in the criminal matter because he was misled by

---

[10] The *Nunc Pro Tunc* Petition appears in the Original Record at Item 2.

[11] "Allowance of an appeal *nunc pro tunc* lies at the sound discretion of the trial court." *Baker v. City of Philadelphia*, 603 A.2d 686, 689 (Pa. Cmwlth. 1992) (emphasis omitted). "The trial court **(Footnote continued on next page…)**

statements made by "a court official" as to the consequences of his guilty pleas; and (2) he acted promptly to file his *Nunc Pro Tunc* Petition upon being denied administrative relief by the Commission.

## II.  Analysis

Appellant entered his guilty pleas on December 17, 2019.  Thus, if Appellant wished to challenge them, he was required to file a notice of appeal to seek a trial *de novo* pursuant to Pa.R.Crim.P. 460 within 30 days, or by January 16, 2020. Appellant did not file his *Nunc Pro Tunc* Petition until August 5, 2020.  Therefore, the only way Appellant could attack the guilty pleas was by obtaining relief through a petition for leave to appeal *nunc pro tunc*.

A court may grant an appeal *nunc pro tunc* as a "remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." *Commonwealth v. Stock*, 679 A.2d 760, 764 (Pa. 1996).  A party seeking leave to appeal from a summary conviction *nunc pro tunc* has the burden of demonstrating two things: (1) that the delay in filing his appeal was caused by extraordinary circumstances involving fraud or a wrongful or negligent act of a court official resulting in injury to that party; and (2) that upon learning of the existence of the grounds relied upon for *nunc pro tunc* relief, he acted promptly to seek such relief. *Commonwealth v. Yohe*, 641 A.2d 1210, 1212 (Pa. Super. 1994).  *See also Commonwealth v. RST Partners*, 928 A.2d 394 (Pa. Cmwlth. 2007) ("a court may extend the 30-day time period for filing a notice of appeal from a summary conviction only if a party shows that the delay in filing its appeal was caused by extraordinary circumstances involving fraud or a wrongful or negligent act by a court official

---

abuses its discretion when it misapplies the law or when it reaches a manifestly unreasonable, biased or prejudiced result." *Allen v. Thomas*, 976 A.2d 1279, 1281 n.6 (Pa. Cmwlth. 2009).

resulting in injury to the party"). With respect to a party's responsibility to act promptly:

> A party seeking permission to file an appeal *nunc pro tunc* must . . . establish that (1) the appeal was filed within a short time after learning of and having an opportunity to address the untimeliness; (2) the elapsed time period is of very short duration; and (3) the appellee will not be prejudiced by the delay.

*H.D. v. Pennsylvania Department of Public Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth. 2000).

Appellant alleges that his late attempt to appeal his guilty pleas should be excused because he entered them based on Warden Barron's representation that this would end the matter, the import of which was that Appellant's hunting license would not be revoked. He argues that had Warden Barron told him that his license could be revoked he would not have pleaded guilty, and that Warden Barron's statements in the field were the reason he did not appeal his guilty pleas within 30 days. He maintains that these misrepresentations amount to "fraud or wrongful or negligent act of a court official." After careful consideration of the issue, we must disagree.

First, we are not convinced that a game warden can be classified as a "court official" for purposes of *nunc pro tunc* relief in a criminal matter, as the doctrine has been applied to administrative personnel within the court system and agencies rather than law enforcement officers. *See Commonwealth v. Bogden*, 528 A.2d 168, 170 (Pa. Super. 1987) (finding an administrative breakdown justifying *nunc pro tunc* relief where a common pleas court failed to inform a party of the proper appeal period); *Commonwealth v. Anwyll*, 482 A.2d 656, 657 (Pa. Super. 1984) (finding an administrative breakdown justifying *nunc pro tunc* relief where a common pleas court misstated the appeal period). Game wardens, also referred to as "enforcement officers" in Pennsylvania, are law enforcement officers employed by the Commission charged

with enforcing the Game and Wildlife Code. 34 Pa.C.S. § 901 (Powers and Duties of Enforcement Officers); 34 Pa.C.S. § 903 (Game Commission officers and employees). *See also In Interest of Mellott*, 476 A.2d 11, 14 (Pa. Super. 1984) ("Deputy game wardens are law enforcement officers charged with enforcing the Pennsylvania Game Law."). While they may appear in court proceedings to testify or present evidence, game wardens function as law enforcement personnel rather than as administrative officers of the court or the Commission.

In *Commonwealth v. Liptak*, 573 A.2d 559, 560 (Pa. Super. 1990), *rev'd on other grounds*, *Department of Transportation, Bureau of Driver Licensing v. Tarnopolski*, 626 A.2d 138 (Pa. 1993), the defendant sought to appeal *nunc pro tunc* from his guilty plea before a magistrate for violations of the Motor Vehicle Code. He argued that the police officer who issued the citation had misrepresented that "no further suspensions would be imposed on his driving privileges were he to simply plead guilty," which he argued constituted fraud or a negligent act by a court official, as the guilty plea ultimately resulted in the suspension of his driver's license. *Liptak*, 573 A.2d at 559. The *Liptak* Court concluded that the officer's comment did not constitute fraud or negligence by a court official, noting that

> a police officer is charged with the responsibility of enforcing the laws of the Commonwealth. Unlike a district justice, who is a member of the unified judicial system, 42 Pa.C.S.[] § 301, a police officer is not responsible for the administration of the judicial system. Clearly, a district justice, or a member of his or her staff, is a "court official" whose fraudulent, wrongful or negligent conduct causing injury to a party would, unquestionably, implicate the integrity of the judicial system. In such a situation, there would be little hesitation to conclude that a breakdown in the court's operation had occurred. However, we deem it ill-

advised to consider police officers as among those who would be considered a "court official".

573 A.2d at 561. The *Liptak* Court further determined that, even had the defendant been subjected to a fraud by a court official, he was still not entitled to relief because he failed to act promptly once he discovered the fraud. *Id.* at 562.

We believe the Superior Court's rationale in *Liptak* is correspondingly applicable here. Like police officers, game wardens are not responsible for the administration of the judicial system. Rather, they interact with the judicial system in an enforcement capacity. As the Commission points out, 34 Pa.C.S. § 901 (Powers and duties of enforcement officers), contains a lengthy list of the powers and duties of enforcement officers. However, none of those duties indicate that the enforcement officers have an ability to bind the Commission in any way, or make final decisions related to revocations of hunting privileges. Therefore, Pennsylvania case law does not support classifying a game warden as a court official for purposes of *nunc pro tunc* relief.

Moreover, even were we to accept Appellant's argument that Warden Barron was a court official, we note that Appellant would, nevertheless, not be entitled to *nunc pro tunc* relief. By all accounts, **before the 30-day appeal period even expired**, Appellant was informed by the district magistrate's office on December 18, 2019, **one day** after he entered his guilty plea, that by pleading guilty, his license could indeed be revoked. (R.R. at 15.) Appellant was also informed by Warden Barron on December 19, 2019, **two days** after he entered his guilty pleas, that he "**would be** losing his hunting license privileges at that time." *Id.* at 13, 17 (emphasis added). Therefore, Appellant knew almost immediately after he entered his pleas that he had cause to withdraw them on grounds that he was unfairly induced by Warden Barron to enter them. Any misinformation Appellant received from Warden Barron in the field was

9

corrected within two days. Nevertheless, Appellant does not explain why, armed with this knowledge, he did not move to appeal his guilty pleas within the mandatory 30 days.

Appellant also does not explain how Warden Barron's statements induced him or misled him in any way as to his appeal of his guilty plea **once he learned definitively that his hunting license would be revoked**. Rather, Warden Barron's statements during the field confrontation go to why Appellant pleaded guilty to the citations in the first place. Even if the circumstances were as Appellant claims, *i.e.*, he was **initially** misinformed regarding the revocation of his license and, therefore, pleaded guilty, it has no bearing on his need to appeal his guilty pleas once he learned on December 19, 2019, with certainty, that his hunting license was being revoked. The misleading nature of Warden Barron's statements relates to why Appellant believes the guilty pleas should be set aside **if** *nunc pro tunc* relief were to be granted.

It is well-settled that "not every misstatement by an apparently authoritative person will justify a *nunc pro tunc* appeal; rather, **the misinformation must relate to the availability, timing, or need for an appeal**." *Greene v. Unemployment Compensation Board of Review*, 157 A.3d 983, 992 (Pa. Cmwlth. 2017) (emphasis added). In *Greene*, the claimant did not timely appeal a determination based upon a misunderstanding about the effect his receipt of severance payments would have on his unemployment compensation (UC) benefit eligibility due to a conversation he had with a UC representative prior to his being laid off. *Id*. at 984-85. The Unemployment Compensation Board of Review (UCBR) dismissed the appeal as untimely, and this Court affirmed, rejecting the claimant's argument that *nunc pro tunc* relief should be granted because the UC representative had misled him **about his eligibility for UC benefits**. *Id.* at 991. We concluded that "there [we]re simply no

10

statements attributable to [UC] authorities that address[ed] the availability, timing or need for an appeal." *Id.* at 992. Accordingly, we affirmed the UCBR's order.

Here, the breakdown alleged by Appellant is relevant to **why** he initially pleaded guilty. It is not, in any way, relevant to his failure to promptly withdraw his guilty pleas – because he learned two days later (well within the 30-day appeal period) that his hunting privileges were, in fact, going to be revoked. Thus, the trial court did not abuse its discretion when it concluded that Warden Barron's statements during the field confrontation did not equate to extraordinary circumstances involving fraud or a wrongful or negligent act of a court official that justified Appellant's delayed appeal under the *nunc pro tunc* standard.

Even assuming, *arguendo*, that Appellant had demonstrated a breakdown in the process, he must also demonstrate that he proceeded with reasonable diligence once he learned of the existence of grounds for *nunc pro tunc* relief. Appellant asserts that he reasonably and promptly pursued his challenge to the guilty pleas after receiving **the Commission's final administrative order on July 6, 2020, upholding the revocation of his hunting license**. He suggests that this date marked the first time he learned, contrary to Warden Barron's statements, that even if he pleaded guilty to the citations, his license would nevertheless be revoked for three years. However, the Commission's July 6, 2020 final administrative order did not mark the first time Appellant learned of the existence of grounds for *nunc pro tunc* relief; therefore, we do not agree that it is the operative date from which his promptness should be measured. As noted, the earliest Appellant was made aware of the grounds for their relief would have been either December 18, or December 19, 2019. At the latest, Appellant may have learned of grounds for *nunc pro tunc* relief in mid-February, when he received the Commission's Revocation Notice, which operated to dispel any false notion he may

11

have had with respect to the import of Warden Barron's earlier statements. Therefore, it is from this date that we shall measure promptness.

In *Commonwealth v. Murnin* (Pa. Cmwlth., No. 37 C.D. 2020, filed June 30, 2022),[12] the defendant was cited for various violations of the Game and Wildlife Code. A hearing was held before a magisterial district judge (MDJ). After the hearing, the MDJ found the defendant guilty of shooting on or across a highway. Thereafter, the Commission notified the defendant that it was revoking his hunting license for one year. Then, more than five months after his conviction, the defendant filed a petition to appeal *nunc pro tunc* with the trial court. He alleged that he did not appeal from his conviction because he believed that no hunting license revocation would result therefrom. Slip op. at *4. In support, he alleged that his counsel and the game warden reached an agreement that if the defendant did not appeal from his conviction, the MDJ would "hold off on a finding of guilt as to the [Use of a Vehicle] charge," which "carries an automatic license suspension." *Id.* He contended that it was the intent of the parties to avoid the suspension of the defendant's hunting license. The trial court denied the defendants appeal *nunc pro tunc* for failure to file the appeal within a reasonable time. *Id.*

On appeal, this Court held that the defendant did not file his appeal *nunc pro tunc* within a short time after learning of and having an opportunity to address the untimeliness. We reasoned that

> [t]he Commission sent [the defendant] the Revocation Notice on August 3, 2018, stating therein that [his] license was revoked for one year effective July 1, 2019, thereby clearly revealing that if there was an agreement, the Commission

---

[12] While *Murnin* is an unreported decision, and therefore not binding precedent, the Court finds it to be persuasive authority. *See* 210 Pa. Code § 69.414(a) (stating that unreported decisions issued after January 15, 2008, may be cited for their persuasive value).

12

> would not adhere to it. The Commission issued its Final Order upholding the license revocation on November 16, 2018. Notwithstanding, [the defendant] did not file his Appeal *Nunc Pro Tunc* from the Conviction until January 3, 2019, approximately **196** days after his Conviction, **153** days after the Revocation Notice, and **48** days after the Final Order – all of which are well beyond the 30-day appeal period.

Slip op. at *7 (emphasis in original).

Here, Appellant was aware that his hunting license was revoked in mid-February. Yet, Appellant did not move to withdraw his guilty pleas until **five months** later. Thus, Appellant did not file his *Nunc Pro Tunc* Petition "within a short time after learning of and having an opportunity to address the untimeliness[,]" and "the elapsed time period [was] [not] of **very short duration**[.]" *H.D.*, 751 A.2d at 1219 (emphasis added); s*ee also Amicone v. Rok*, 839 A.2d 1109 (Pa. Super. 2003) (holding that a 4-month delay in filing a *nunc pro tunc* appeal was not reasonable); *Department of Transportation, Bureau of Traffic Safety v. Johnson*, 569 A.2d 409 (Pa. Cmwlth. 1990) (holding that a 2-month delay in filing a *nunc pro tunc* appeal was not reasonable). Accordingly, the trial court properly applied the law to the facts and denied Appellant's *Nunc Pro Tunc* Petition for failure to file the appeal within a reasonable time and properly concluded that Appellant had failed to satisfy a necessary element for *nunc pro tunc* relief – prompt action seeking such relief. *See H.D.*; *Yohe*.

### III.    Conclusion

For all of the reasons set forth above, we conclude that the trial court did not abuse its discretion in denying Appellant's *Nunc Pro Tunc* Petition.[13]

_____
PATRICIA A. McCULLOUGH, Judge

---

[13] The Court recognizes that hunting is an important right, steeped in longstanding tradition. In our Commonwealth, hunting is not only for recreation, but also an important natural resource and a vital wildlife management and conservation practice.  This case, however, is not about those rights, and we take no position on the merits of the convictions or the validity of the guilty pleas.  The issues presented to this Court involve questions of procedure.  In this case it is clear the trial court did not err in its denial of *nunc pro tunc* relief and, as such, we are constrained to affirm.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1456 C.D. 2021 |
| | : | |
| Ronald P. Ware, | : | |
| Appellant | : | |

## *ORDER*

AND NOW, this 23rd day of March, 2026, the December 15, 2020 order of the Court of Common Pleas of Somerset County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge